**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


**Glenn L. Forni**

    **v.**                            Civil No. 05-cv-406-PB
                                         Opinion No. 2006 DNH 120
**Jo Anne B. Barnhart, Commissioner,**
**Social Security Administration**


**MEMORANDUM AND ORDER**

Glenn L. Forni challenges the Commissioner of Social Security's ("Commissioner") decision denying his application for Social Security Disability ("SSD") and Supplemental Security Income ("SSI") benefits.  <u>See</u> 42 U.S.C. § 405(g).  He argues that the Administrative Law Judge ("ALJ") who considered his claim improperly failed to consider his psychiatric impairment in combination  with his physical impairments.  For the reasons set forth below, I grant Forni's motion to reverse (Doc. No. 8) and deny the Commissioner's motion to affirm (Doc. No. 11).

## I.   <u>Background</u>[1]

### A.   <u>Procedural History</u>

Forni filed concurrent applications for Social Security benefits.  His application for SSI benefits received an oral protective filing date of January 14, 2003.  Tr. at 219.  He filed his application for SSD benefits on April 8, 2003, alleging disability since October 3, 2002.[2]  After his application was initially denied, Forni requested a hearing by an ALJ.  After the requested hearing, the ALJ denied Forni's applications, finding that he remained able to perform a significant number of light and sedentary jobs in the national economy.  The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Forni's request for review of such decision.  Forni then filed this action for review of the Commissioner's decision, pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

---

[1]   Unless otherwise noted, the background facts recited in this Memorandum and Order are drawn from the Joint Statement of Material Facts (Doc. No. 12) submitted by the parties pursuant to Local Rule 9.1.  Citations to the Administrative Record Transcript are in the form "Tr."

[2]   Forni originally alleged a disability onset date of September 29, 2002, but amended this date during the hearing before the ALJ.

**B.  Education and Work History**

Forni was born on November 9, 1965.  Tr. at 65.  He was 39 years old when the ALJ denied his application in May 2005.  Forni has an eighth-grade education; obtained his GED in 1998; and has worked as a truck loader/servicer, forestry worker, machine tender, needle grinder and floor cleaner.  His last reported work was in September 2002.  For the six years prior, Forni worked full-time as a machine tender at Lacrosse Footwear.

**C.  Medical History**

    **I.  Asthma**

In March and October 2001, Forni was treated at the Valley Regional Hospital Emergency Room for acute asthma symptoms.  On both occasions he was treated with Ventolin nebulizers and received a prescription for Prednisone.  He suffered sinus troubles in the month prior to the October incident.  Testing in October 2002 showed a moderate obstructive defect of the lungs with significant reversibility, consistent with the prior asthma diagnosis.

By April 2003, Forni was using his inhaler properly and having only occasional attacks.  In May 2003, Forni complained to his primary care physician, Charles J. Brenton, M.D., that pollen

-3-

was aggravating his asthma.  Dr. Brenton reported that Forni's
lungs were clear.

In January 2004, Dr. Brenton reported that Forni's asthma
"has been treated effectively with the usual medications and
confers no disability."  Tr. at 207.

### ii.  __Carpal Tunnel Syndrome__[3]

On September 24, 2002, Valley Family Physicians diagnosed
Forni with probable carpal tunnel syndrome and recommended
nocturnal splints.  In October 2002, Forni saw Edward J.
Orecchio, M.D., F.A.A.N, a neurologist and clinic
neurophysiologist, for numbness in his hands and discomfort in
his right arm.  Tr. at 143, 148.  Forni said he had had the
problem since 1996, but recently the pain in his right arm had
been waking him up in the night.

EMG testing showed moderately severe bilateral carpal tunnel
syndrome and a right-side conduction block.  Dr. Orecchio
referred Forni to John P. Houde, M.D., for a surgical
consultation.  Dr. Houde saw Forni several times in late 2002 and

---

[3]  Carpal tunnel syndrome is defined as "a complex of
symptoms resulting from compression of the median nerve in the
carpal tunnel, with pain and burning or tingling paresthesias in
the fingers and hand, sometimes extending to the elbow."
Dorland's Illustrated Medical Dictionary 1812 (28th ed. 1994).

-4-

2003 for continued numbness and tingling in his hands caused by bilateral median nerve compression.  Forni stated that the symptoms persisted and he was frustrated with the effect that his symptoms had on his activity level and sleep.  Symptoms in his right hand were worse than in his left.  After discussing all options, Forni decided to proceed with an open carpal tunnel release on his right hand.

In August 2003, Forni had surgery to release the medial nerve compression in his right hand.  On October 22, 2003, Forni had improved symptoms of median nerve compression, but worsened symptoms of ulnar nerve neuropathy.

On November 5, 2003, Dr. Orecchio, noted that Forni had experienced fairly substantial relief from the surgery, but had developed finger numbness after resuming weight-lifting on a limited basis.  Forni had been given clearance for limited weight lifting, but Dr. Orecchio reported that Forni "has been abusing it a bit with the weights."  Tr. at 156.  EMG testing was abnormal and showed median nerve deficits.  Dr. Orecchio found no evidence of ulnar nerve pathology, but did note at least a syndrome of ulnar nerve condition that did not appear to be of major significance.  Dr. Orecchio recommended that Forni avoid

stressing his hands and arms (by excess lifting of weights) to allow time for sufficient healing.

On November 18, 2003, Dr. Houde again noted improved symptoms of median nerve compression, but worsened symptoms of ulnar nerve neuropathy.  Forni was easily irritated in both the median and ulnar nerve distributions of his right hand.  Dr. Houde felt that Forni was not then able to return to any physical or manual labor.

In December 2003, Dr. Houde noted that the carpal release surgery had dramatically decreased Forni's numbness and tingling in his right thumb and index finger, but that he still had some wrist and palm pain.  Forni reported that the discomfort increased after he moved furniture and changed a tire.  He was given a Durgesic patch to try and decrease his need for Percocet, and was sent back to an occupational therapist for deep tissue massage and paraffin treatments.

In January 2004, Dr. Houde noted that Forni's median nerve compression symptoms had improved but that he continued to experience ulnar nerve symptoms.  Forni had some discomfort on extension and flexion of the right ring and little fingers, but no loss of wrist strength or range of motion.

-6-

On February 10, 2004, Forni told Antoin Hussam, M.D., a physician at the Dartmouth Hitchcock Medical Center Pain Clinic, that he had no hand pain when not using his hands, but developed "overuse pain" with repetitive movements, such as those conducted on machinery he had used at work.  Tr. at 214.  He described his pain as intermittent, mild to moderate, aching pain in his right palm with radiation to his right lower arm.  He told another Pain Clinic physician, Majid Ghazi, M.D., that he had no current pain at that time.

Also in February 2004, Dr. Brenton noted that the Pain Clinic had determined that a ganglion block would not likely help Forni's ulnar symptoms.  Dr. Brenton prescribed Percocet on a limited basis for pain relief.  On February 12, 2004, Forni called the Pain Clinic and requested further pain medication from Jason Brokaw, M.D., who denied the request.

In April 2004, Dr. Brenton observed that Forni was using his pain medication in an appropriate manner.  Forni also told Dr. Brokaw that his hand condition had not really changed since January.  He acknowledged increased pain when he handled heavy weights and that the pain felt like a deep gnawing at the center of his palm.  Dr. Brokaw felt that most of his pain complaints

following the carpal tunnel release were somatic ones associated with heavy use.  Dr. Brokaw did not feel Forni would be likely to return to heavy mechanical labor.  During one visit, Dr. Brokaw noted Forni's "workman-type hands," with lots of dirt under the fingernails, and wondered if Forni was using his right hand more than he was reporting.  Tr. at 211.

Dr. Brokaw described Forni's hands as having good range of motion and strength.  He felt that, although Forni could not return to the same type of work he had done previously, it was important for him to get back to "whatever work he can do."  Tr. at 212.  Dr. Brokaw recommended a functional restoration program to get him back in the work force, but noted that Forni might be resistant to such a course.  Dr. Brokaw concluded that the Pain Clinic had nothing further to offer Forni and released his care back to Dr. Brenton.

On April 22, 2004, Dr. Brenton noted that the Pain Clinic was unable to help, but that they recommended a rehabilitation and restoration program.  Dr. Brenton wanted to wean Forni from Percocet because of its addictive and abusive tendencies.  He agreed to try Bextra and Tramadol for pain relief.

Forni saw Dr. Brenton again in August and October 2004. During this time, Forni decided not to have surgery on his left hand since his primary discomfort was still in his right hand. Dr. Brenton reported that Forni had been very conservative with his use of Percocet.

On November 8, 2004, Dr. Brenton wrote that Forni's ongoing carpal tunnel syndrome had been problematic.  Tr. at 207.  He stated that Forni had had numerous consultations with experts in orthopedics, neurology and pain management, as well as numerous treatments with various medications, physical therapy, splinting and surgery.  Dr. Brenton reported that Forni's refractory pain limited his use of both hands.  He stated that Forni was unable to do any heavy manual work or perform jobs requiring repetitive motion of the hands, but that he thought Forni had excellent rehabilitation potential for a variety of occupations if resources were provided to ensure the necessary education.

In December 2004, Forni was still having trouble sleeping. Dr. Brenton again referred him to the Pain Clinic.

**ii.  <u>Depression</u>**

In April 2003, Forni told Dr. Brenton that his stress levels were high and he was having anger outbursts, centered primarily

around his ex-wife and controversies over his children.  He also reported that he had been affected by the recent death of his brother and the denial of his workman's compensation claim.  Dr. Brenton continued Forni on Clonazepam (an anti-anxiety drug) and gave him a prescription for Zoloft (an anti-depressant drug).

In May 2003, Dr. Brenton reported that Forni was "getting along well enough" on Clonazepam, was feeling "much more calm," and was not "having the tendencies he was having before," despite ongoing stress over his ex-wife and children.  Tr. at 145.  Dr. Brenton stopped the Zoloft prescription at this time because it was causing heartburn.  Tr. at 145.

In July 2003, Forni began therapy with Mark Linett, M.Ed, LCMHC, LADC for complaints of depression dating back to the deaths of his younger brother and mother the previous year. Forni reported that his wife of thirteen years left him around the time of his brother's death.  He admitted to irritability, difficulty sleeping and anhedonia (total loss of feelings of pleasure in acts that normally give pleasure).  He found it difficult to focus.  Mr. Linett noted that Forni seemed more anxious than depressed, and diagnosed an anxiety disorder.

-10-

On July 9, 2003, Forni told Dr. Brenton that his depression was currently worse and that he was becoming very short tempered and having emotional outbursts.  Dr. Brenton decided to start Forni on Paxil (another anti-depressant drug).

On July 16, 2003, Mr. Linett noted that Forni was intermittently tearful during his therapy session and he did not think Paxil was helpful.  Forni complained of multiple stressors.

In August 2003, Dr. Kline noted that Forni showed no sign of any thought disorder, but did display some symptoms of a generalized anxiety disorder and possible dysthymia.[4]  Dr. Kline determined that Forni was suffering from a generalized anxiety disorder, noting that Forni experienced irritability, worry over the safety of his three-year-old child, intermittent crying, panic often, feelings of helplessness and hopelessness, as well as memories of trauma as a child.  Tr. at 177.

Forni reported that as a child his mother was severely disabled and that his two oldest siblings were unkind to him. His older brother was very abusive and often beat him with

---

[4]  Dysthymia: a mood disorder characterized by depressed feeling and loss of interest or pleasure in one's usual activities and in which the associated symptoms have persisted for more than two years but are not severe enough to meet the criteria for major depression.  Dorland's at 519.

studded belts, leaving big welts.  Forni said that in 1984 he was
so depressed he put a gun in his mouth and considered suicide.
He was hospitalized at the State Hospital in Massachusetts for
eight days.  He spoke most about the problems he was having with
his ex-wife over custody of their youngest child.

Forni claimed during his interview with Dr. Kline that his
commitment to his children (then ages 13, 12 and 3) prevented him
from ever considering suicide.  His mood was euthymic (normal,
neither elated nor depressed) and his judgment appeared intact.
Dr. Kline rated Forni's global level of functioning at GAF 60,
and prescribed Remeron (an anti-depressant drug) to help with
anxiety, depression and sleep problems.

Forni saw Mr. Linett again on October 7, 2003.  Forni was
upset because of an allegation that someone had sexually abused
his three-year-old son, which was then being investigated by the
police and the Division for Children, Youth & Families (DCYF).
Forni said he passed a lie detector test regarding the
allegations, and he believed his ex-wife's boyfriend was the
perpetrator.  Forni believed this incident added to his stress
and brought up memories of his own sexual abuse. Later that week,
Mr. Linett noted that Forni complained about chronic wrist pains

and emotional stressors.  He wrote that Forni had difficulty focusing and appeared agitated.

In November 2003, Dr. Kline noted that Forni was doing "pretty well" on Remeron, with no adverse side effects.  His anxiety was better controlled and he was having less difficulty sleeping.  Forni said he was doing fairly well except for the continuing carpal tunnel pain.

In December 2003, Forni underwent a psychological examination by Francis Warman, Ph.D.  Tr. at 157–60.  Forni said his primary reason for seeking disability status was his carpal tunnel syndrome, but that he also had feelings of depression.  He was currently having difficulties with his ex-wife, but was very interested in his children and was attempting to take good care of them.  He reported difficulties in concentration and memory, periods of tearfulness, and poor appetite.  He had been on both Zoloft and Paxil, but did not tolerate them well and more recently was treated with Klonipan and Remeron.

Forni seemed somewhat downcast and became tearful on one occasion.  He appeared fully oriented and reported being able to do dishes and cleaning, as well as to drive.  He did some socializing and enjoyed building models.  Dr. Warman concluded

-13-

that Forni had a normal ability to understand and remember instructions, and could concentrate adequately and complete tasks.  Forni could interact appropriately and communicate effectively with others.  Despite some depression, he could cope with the stress of most work-like settings.  Dr. Warman concluded that Forni was suffering from depression.  He said that, overall, Forni's prognosis was fair.  In January 2004, Mr. Linett reported Forni was anxious and that Forni had difficulty focusing on what he needed to change.

Forni saw Dr. Brenton in December 2004.  At that time, he was having trouble sleeping and was again referred to the Pain Clinic.  Dr. Brenton wrote that Forni continued to be under a fair amount of stress and had some anger issues.  He was encouraged to stay on Klonapin.

**D.   <u>Administrative Evidence</u>**

On May 1, 2003, Forni completed a Disability Determination Services ("DDS") questionnaire about his daily activities.  Tr. at 71-74.  Forni reported he could take care of himself and his three children, but that household chores took "awhile" and required assistance.  <u>Id.</u> at 71-72.  Specifically, he said he cleaned his home, took his 12- and 13-year-old children to

-14-

school, cared for his 3-year-old son three-to-five days per week, and did laundry.  Id. at 71.  Forni reported difficulty carrying his youngest son because his hands and arms were numb to his elbows, and that he needed assistance carrying laundry.  Id.  He reported taking sleep medications, without which he said he woke up every night from hand numbness and/or asthma.  Id.  Forni reported going out of the house often in summer, but very little in winter because of his asthma.  He also stated that his inability to work out had changed his social activity.  Id. at 72-73.  Finally, he said he was unable to work because he felt like he had an electrical cord on his arms, and had been fired from his job after presenting a doctor's note.  Id. at 73.

On December 19, 2003, Forni completed a similar questionnaire after having carpal tunnel release surgery on his right hand.  Id. at 75-78.  His report was similar, except that he said his right hand hurt more after surgery and that he was easily distracted and prone to forgetting what he is doing.  Id. at 75, 77.  He claimed that hand pain kept him up for the next three nights after doing yard work.  Id. at 78.

On December 23, 2003, state agency Disability Adjudicator Linda Ellsworth reviewed Forni's file and completed a vocational

assessment.  Ellsworth determined that Forni could occasionally lift 20 pounds; frequently lift 10 pounds; stand or walk for six hours in an eight-hour workday; and sit for six hours in an eight-hour workday.  Id. at 80.  She stated that he should avoid both frequent fine finger movements and work in air-polluted areas.  Ellsworth opined that Forni's Residual Functioning Capacity ("RFC") probably prevented him from performing his past relevant work, but that he should be able to work as a security guard, watchman or gate guard; automobile self-serve station attendant; or movie theater ticket salesman.  Id.

Also in December 2003, DDS psychologist Nicholas S. Kalfas, Ph.D. reviewed Forni's medical records and found no medically determinable impairment.  Tr. at 161-163.  Additionally, DDS physician Hugh F. Farley, M.D., reviewed records of Forni's physical impairments and concluded he should be able to do light work that did not involve frequent fingering and which did not involve exposure to air pollutants in the workplace.  Tr. at 167-173.

**E.   Forni's Hearing Testimony**

Forni, who was represented by counsel, testified at the hearing before ALJ Edward G. Hoban on November 17, 2004.  Tr. at

237-255.  Forni testified that his hands woke him up in the middle of the night.  He claimed that he would wake up not feeling his hands and said it felt like somebody had lain an electrical cord on his arms.  The feeling carried up to his elbows.

He testified that the problem started when he was working at Lacrosse; it was really bothering him in 2002; he was left-handed; and the pain was worse in his right hand.

Forni testified he had not been lifting weights.  He said he had tried a couple times but his hands would subsequently go numb so he stopped.  He said he took care of his kids and did minor maintenance on his car.  The doctor said he could do minor things as long as it was not all the time.  He said he did a brake job once every couple months.

Forni described the pain as an eight on a 1-10 scale.  He expressed fear of having surgery on his left hand, and said he took pain medication just about every day.

He said he did not have money to continue counseling; that his psychological medications made him want to sleep.  He said he had high stress due to his ex-girlfriend and was struggling with his brother's violent death in a car accident.  Forni said he had

no legal problems in the prior year, had stayed out of trouble, and took care of his kids.

**F.   Vocational Expert's Testimony**

Kenneth Sutton appeared as a vocational expert ("VE") at Forni's hearing.  The ALJ asked Sutton to assume that Forni could do light work (1) that did not involve repetitive fine finger manipulation, and (2) that took place in an essentially clean workplace without exposure to respiratory irritants.  Tr. at 258. In response, the VE testified that Forni could not return to his past work but should be able to perform the light work occupations of parking lot attendant, photo-finishing counter operator, gate guard and receptionist or information clerk, and the sedentary occupations of surveillance system monitor and telephone survey worker (or telemarketer).  Tr. at 259-260.

**G.   The ALJ's decision**

The ALJ determined at step two that Forni's psychiatric impairment was not severe.[5]  Having found this, the ALJ did not

_____

[5]   The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In order to determine whether a claimant has a disability resulting from a

consider Forni's alleged depression at steps three, four or five of the sequential analysis.  In contrast, the ALJ found at step two that Forni's carpal tunnel syndrome and asthma were severe impairments, and accordingly he considered both impairments throughout the entire sequential analysis.

In assessing Forni's RFC, the ALJ found that Forni's subjective allegations of carpal tunnel pain were not fully credible.  He then determined that despite his carpal tunnel and asthma, Forni retained the ability to stand/walk for six hours in an eight-hour day; sit for six hours; lift/carry ten pounds frequently and twenty pounds occasionally; is restricted from

---

physical or medical impairment, the ALJ conducts a five-step sequential analysis.  20 C.F.R. § 404.1520.  The claimant has the burden at each of the first four steps to show that:

    (1) the claimant is not engaged in substantial gainful activity; <u>and</u>

    (2) the claimant has a severe impairment; <u>and</u>

    (3) the impairment meets or equals a specific impairment listed in the SSA regulations; <u>or</u>

    (4) the impairment prevents the claimant from performing past relevant work.

<u>Id.</u> § 404.1520(a)(4)(I)-(iv).  At step five, the burden shifts to the Commissioner to show "that there are jobs in the national economy that [the] claimant can perform."  <u>Heggarty v. Sullivan</u>, 947 F.2d 990, 995 (1st Cir. 1991).  The ALJ's conclusions at steps four and five are informed by his assessment of the claimant's RFC, which is a description of the kind of work that the claimant is able to perform despite his impairments, including pain.  20 C.F.R. §§ 404.1520, 404.1545.

concentrated exposure to excessive dust, fumes, and pulmonary irritants; is restricted from repetitive handling/hand motions; and is unable to perform any fine finger manipulations with either hand.  These restrictions, he found, prevent Forni from returning to past relevant work.  In light of Forni's vocational profile and restrictions as described above, the ALJ found that Forni was nonetheless capable of performing a range of light work and sedentary work that exist in significant numbers in the national economy.  Accordingly, the ALJ determined at step five that Forni was not disabled and therefore not entitled to benefits.

## II.  __STANDARD OF REVIEW__

Pursuant to 42 U.S.C. § 405(g), I am authorized to review the pleadings submitted by the parties and the transcript of the administrative record and enter a judgment affirming, modifying, or reversing the ALJ's decision.  An ALJ's factual findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is that which "'a reasonable mind, reviewing the evidence in the record

as a whole, could accept . . . as adequate to support [the]

conclusion.'"   Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y

of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

Thus, the ALJ's decision is supported by substantial evidence if

it is reasonable.

The ALJ is responsible for settling credibility issues,

drawing inferences from the record evidence, and resolving

conflicting evidence.   Id. at 769.   If the ALJ's findings as to

these matters are reasonable, I must uphold them "even if the

record arguably could justify a different conclusion."   Tsarelka

v. Sec'y of Health & Human Servs., 842 F.2d 529, 535 (1st Cir.

1988).   On the other hand, the ALJ's findings are not conclusive

if they were "derived by ignoring evidence, misapplying the law,

or judging matters entrusted to experts."   Nguyen v. Chater, 172

F.3d 31, 35 (1st Cir. 1999).   I apply these standards to the

arguments Forni raises in his appeal.


### III.  **ANALYSIS**

Forni argues that the ALJ erred by: (1) applying a

heightened standard at step two in finding his depression was

non-severe; (2) failing to properly consider his manipulative

limitations when determining his RFC; and (3) improperly analysing his subjective allegations of pain caused by carpal tunnel syndrome.  Although I question the ALJ's conclusion that Forni's depression did not qualify as a severe impairment, I need not resolve the case on that basis because I agree with Forni's broader contention that the ALJ failed to properly consider his depression when determining his ability to work.  Whether or not Forni's depression qualified as a severe impairment standing alone, the ALJ was required to consider it in combination with his other impairments when evaluating Forni's work capacity.  Because the ALJ failed to do so, I vacate his decision and remand for further proceedings.  I also briefly discuss Forni's second and third arguments in an effort to provide guidance upon remand.

**A.    Failure to Properly Consider Forni's Depression**

In determining whether a claimant is disabled, an ALJ must consider "the combined effect of all of a claimant's impairments."  McDonald, 795 F.2d at 1126 (citing 42 U.S.C. § 423(d)(2)(C)); see also 20 C.F.R. § 404.1520(a).[6]  It is "simply

---

[6]  See also 20 C.F.R. § 404.1523 Multiple Impairments ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your

a matter of common sense that various physical, mental, and psychological defects, each nonsevere in and of itself, might in combination, in some cases, make it impossible for a claimant to work." See McDonald, 795 F.2d at 1127. Thus, in assessing a claimant's ability to work, the ALJ should not disregard individual, non-severe impairments where the claimant's collective impairments are severe.

Here, the ALJ did just that. Upon reviewing each impairment individually, he determined that Forni's mental impairment was not severe but that his asthma and carpal tunnel syndrome were severe. He then completely (and improperly) dropped Forni's depression from his analysis, thereafter analysing only the effects of asthma and carpal tunnel on Forni's RFC. See Loza v. Apfel, 219 F.3d 378, 392-93 (5th Cir. 2000) (remanding for reconsideration where ALJ erred by only evaluating consequences

_____

impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled") (emphasis added).

of claimant's mental and physical impairments individually and by not considering their combined effects); Dunn v. Apfel, No. 98-591-B, 1999 WL 1327399, at *8 (D.N.H. Dec. 10, 1999) (finding improper analysis at severity stage may have caused failure to properly consider the total limiting effects of claimant's mental and physical impairments when determining her RFC); MacLean v. Sec'y of Health & Human Servs., No. 93-384-SD, 1994 WL 328792, at *2 (D.N.H. July 7, 1994) (remanding in part to determine whether claimant had more than one impairment, and if so, to consider combination of all impairments at each step of disability evaluation process); Edmond v. Sec'y of Health & Human Servs., No. 88-360-D, 1989 WL 281943, at *5 (D.N.H. Mar. 15, 1989) ("ALJ failed to properly consider whether the combination of plaintiff's impairments rendered him disabled").

Because The ALJ failed to analyse Forni's impairments in combination throughout the sequential analysis, I find that his decision was not supported by substantial evidence. Accordingly, I reverse his decision and remand the case for consideration of whether, in light of Forni's combined mental and physical impairments, his RFC would allow him to perform jobs that exist in significant numbers in the economy.

**B.   <u>Manipulative Limitations</u>**

Forni also argues that the ALJ's finding is inconsistent with SSR 96-9p.  This Ruling recognizes that significant manipulative limitations may significantly reduce the number of unskilled sedentary jobs available to a claimant.  <u>See</u> SSR 96-9p, 1996 WL 374185 SSA, at *8.  Forni contends that because he is unable to perform repetitive fine finger manipulations, the ALJ improperly found that he was able to perform sedentary jobs.  I disagree.

SSR 96-9p provides that if any of the limitations identified by treating physicians is deemed to be significant, it may be appropriate for the ALJ to consult a VE.  In such cases, the VE may testify as to whether such limitations diminish the range of sedentary jobs the claimant might otherwise capably perform.  <u>Id.</u> <u>See also</u> <u>Correll v. Barnhart</u>, 2002 D.N.H. 71 *21.  Consistent with this rule, the ALJ obtained VE testimony in this case, which specifically took into account Forni's manipulative limitations. <u>See</u> Tr. at 258.  With these limitations in mind, the VE opined that Forni should nonetheless be able to perform specified light and sedentary jobs.  <u>Id.</u> at 259-260.  Accordingly, I find that the ALJ's ruling on this discrete matter was supported by

substantial evidence.[7]

## C.    **Carpal Tunnel Pain Analysis**

Lastly, Forni argues that The ALJ improperly discredited his subjective testimony that he was not capable of light exertion work, resulting in a flawed RFC assessment.  In particular, he argues that the ALJ failed to address each of the so-called "Avery factors" when he evaluated Forni's subjective complaints of pain due to carpal tunnel syndrome.  I conclude that the ALJ's Avery analysis of Forni's carpal tunnel pain was sufficient and his credibility determination on this matter is supported by substantial evidence.

Assessment of the claimant's credibility is the exclusive province of the ALJ, who observes the claimant, evaluates her demeanor, and considers how her testimony "fit[s] in with the rest of the evidence."  Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).  The ALJ's credibility determination is entitled to deference if it is supported by substantial evidence.  Id.  In determining the credibility of a

---

[7]  As noted above, the ALJ should have reviewed the combination of all three impairments throughout his analysis. With respect to this specific argument, however, I find the error harmless because Forni's manipulative limitations would not be affected by Forni's depression.

claimant's subjective testimony, the ALJ must consider the entire record, including objective medical evidence, the claimant's statements, information provided by physicians and other people, and any other relevant evidence.  SSR 96-7p, 1996 WL 374186 SSA, at *3.

The First Circuit has directed that in evaluating a claimant's subjective complaints of pain and other symptoms, the ALJ should consider a variety of factors (sometimes known as the Avery factors) including "(1) [t]he nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) [p]recipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) [t]ype, dosage, effectiveness, and adverse side-effects of any pain medication; (4) [t]reatment, other than medication, for relief of pain; (5) [f]unctional restrictions; and (6) [t]he claimant's daily activities."  Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 28-29 (1st Cir. 1986); see also SSR 96-7p, 1996 WL 374186 SSA, at *6-7.  The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to

the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 WL 374186 SSA, at *4.

Forni argues the decision is not supported by substantial evidence because The ALJ (1) failed to recite the <u>Avery</u> legal standard; (2) failed to evaluate Forni's treatment for relief of pain and discuss the intensity and persistence of his pain; and (3) unfairly characterized Forni's daily activities.  I disagree for the following reasons.

First, rote recitation of the <u>Avery</u> legal standard is not required.  Although detailed written discussion of the <u>Avery</u> factors is desirable, <u>see</u> <u>Frustaglia</u>, 829 F.2d at 195, an ALJ complies with <u>Avery</u> if, as here, he explores the factors at the administrative hearing.  <u>See</u> <u>Lopes v. Barnhart</u>, 372 F. Supp. 2d 185, 192 (D. Mass. 2005) (ALJ complies with <u>Avery</u> where he covers all of the factors at the hearing); <u>Braley v. Barnhart</u>, No. 04-176-B-W, 2005 WL 1353371, at *17 (D. Me. June 7, 2005) (ALJ need not "slavishly discuss each <u>Avery</u> factor").  A searching review of the hearing testimony reveals that the ALJ reviewed both treatment of pain and intensity and persistence of pain, despite

his cursory treatment of these factors in his express analysis of pain.  See Tr. at 235–236, 244–245, 249, 252 (discussing treatment of pain); 236–238, 240, 242–243, 251 (discussing intensity and persistence of pain).

Second, the ALJ discussed these factors thoroughly in other portions of his ruling.  See id. at 16–17 (discussing treatment of pain, including carpal tunnel surgery; physical and occupational therapy; Percocet prescription to manage persistent carpal tunnel pain; Advair and Combivent prescriptions to manage asthma; treatment by several physicians for carpal tunnel syndrome; pain allegations substantiated by findings of abnormal sensation indicating a conduction block of the median nerve; continued medication and physical therapy; and Forni's deferral of a scheduled stellate ganglion block injection due to absence of pain); 14–15, 17 (discussing intensity and persistence of pain, including allegations of disabling pain; diminished sensation and occasional numbness throughout medial fingers; continued symptoms caused by repetitive movements and fine finger manipulations; and increased hand pain upon lifting weights or using certain machinery).

Third, although I agree with Forni that the ALJ exaggerated in characterizing Forni's weight-lifting,[8] a claimant's daily activities is but one of many Avery factors.  As Forni correctly points out in his brief, an ALJ assessing subjective allegations of pain should review all the Avery factors and decide upon the record as a whole.  Avery, 797 F.2d at 28-29.  No single factor is dispositive.  Even assuming the true record on weight-lifting bolsters Forni's credibility as to pain, it still does not save his claim.

Specific restrictions on Forni's daily activities with respect to pain, which were brought out during his testimony but which the ALJ did not expressly mention, included: (1) his need for assistance carrying laundry and lifting his three-year-old son; (2) working at a slower pace; and (3) a pain level of eight on a 1-10 scale.  Forni also testified that his girlfriend helped him with his chores.  Tr. at 248.  None of this information,

---

[8]   The ALJ stated in his ruling that Forni "actively engaged in heavy weight-lifting exercises throughout the spring of 2004." Tr. at 17-18.  To the contrary, as Forni points out in his brief, the record reflects Forni's disappointment over his inability to lift weights without pain, Dr. Orecchio's clearance of limited weight-lifting, and Dr. Orecchio's treatment notes that Forni may have abused his medial nerve "a bit" by these authorized attempts.  Id. at 73, 76-77, 153, 156, 241.

however, adds any new evidence or insight.  Moreover, the ALJ is
not required to refer one-by-one to each piece of evidence in the
record.  See Rodriguez v. Sec'y of Health & Human Servs., No. 90-
1039, 1990 WL 152336, at *1 (1st Cir. Sept. 11, 1990)(per
curiam).

"More telling than a chronicle of [Forni's] various ailments
are his actual activities, which are incongruous with his
contention that he cannot work."  See Roe v. Chater, 92 F.3d 672,
677-78 (8th Cir. 1996).  The ALJ noted that Forni continued to
perform occasional maintenance on his car and a wide range of
childcare and household activities, including cleaning, driving
and caring for his children.  Tr. at 18, 71-74.  Given the level
of exertion required to conduct car repairs, household chores and
childcare, it was reasonable for the ALJ to infer that Forni
could perform light work.  Furthermore, although the ALJ
exaggerated the extent of it, Forni acknowledged some limited
weight-lifting.  Id. at 241.  Dr. Brokaw reported Forni had
"workman hands" with dirt under the fingernails and lacked
atrophy of the muscles, which reasonably suggested Forni might be
using his hands more than reported.  Id. at 211.  Forni
acknowledged limiting his pain medication, which could reasonably

-31-

suggest less pain than alleged.  Id. at 249.

Lastly, and importantly, every treating physician, reviewing examiner and the VE concluded that Forni could perform light and sedentary work.  Dr. Brenton opined that Forni was unable to do any heavy manual work or perform jobs requiring repetitive motion of the hands, but that he had excellent rehabilitation potential for a variety of occupations.  Id. at 207.  His surgeon, Dr. Houde, reported only that Forni should not perform physical or manual labor.[9]  Id. at 188.  His pain clinic physician, Dr. Brokaw, felt that it was important for Forni to get back to "whatever work he can do," and recommended a functional restoration program.  Id. at 212.  DDS disability adjudicator Ellsworth opined that Forni should be able to work as a security guard, watchman or gate guard; automobile self-serve station attendant; or movie theater ticket salesman.  Id. at 80.  The VE testified that Forni should be able to do the light occupations of parking lot attendant, photo-finishing counter operator, gate guard and receptionist or information clerk, and the sedentary occupations of surveillance system monitor and telephone survey

---

[9]  Forni contends that this limitation should be construed to prohibit not only physical or manual labor, but all work of any kind.  I find no basis for this argument.

worker (or telemarketer).  _Id._ at 259-260.  Finally, and perhaps most telling, Forni himself told the ALJ that he believed he could perform a driving job.  _Id._ at 249.  I conclude that the ALJ's decision that Forni's complaints of carpal tunnel pain were not fully credible is supported by substantial evidence.

## IV.  **CONCLUSION**

Pursuant to sentence four of 42 U.S.C.A. § 405(g), I reverse the ALJ's decision and remand the case for further proceedings consistent with the Secretary's standards as interpreted by the First Circuit and discussed in this order.  Plaintiff's Motion For an Order Reversing the Decision of the Commissioner (Doc. No. 8) is therefore granted, and the defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. No. 11) is denied.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

October 17, 2006

cc:  Jonathan P. Baird, Esq.
     David L. Broderick, Esq.

-33-